IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

Case No. 08-10101-CIV-MOORE/SIMONTON

WPC INDUSTRIAL
CONTRACTORS LTD,

    Plaintiff,

vs.

AMERISURE MUTUAL INSURANCE
CO., a foreign corporation,

    Defendant.
_____/

## ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

THIS CAUSE came before the Court upon Defendant's Motion for Summary Judgment (dkt # 32).

UPON CONSIDERATION of the Motion, the Responses, the pertinent portions of the record, and being otherwise fully advised in the premises, the Court enters the following Order.

### I. BACKGROUND

This case involves an insurance coverage dispute arising out of damage to a home and bodily injury allegedly caused by raw sewage backing up in the home.[1] Plaintiff WPC Industrial Contractors, LTD ("WPC") is an environmental construction management company that specializes in the construction of water treatment plants. In 1999, the Florida Legislature required that sewage systems in the Florida Keys be converted from septic tank systems to waste water treatment systems. See § 381.0065, Fla. Stat. Pursuant to the sewage conversion, the Village of Islamorada hired WPC to act as general contractor in the construction of a waste treatment facility

---

[1] The facts here are taken from the pleadings and attached documents and appear to be largely undisputed. In resolving the duty to defend claim, however, this Court will rely only upon facts alleged in the Complaint.

and sewer collection system, or sewer lines leading to the treatment facility. WPC completed its work in 2006, and the sewage system went into use in the summer of 2006. From January 1, 2006, to January 1, 2007, WPC was covered by a Commercial General Liability policy (the "CGL Policy") issued by Defendant Amerisure Mutual Insurance Company ("Amerisure"). See CGL Policy No. GL2017104020006 (dkt # 1, at 12-85).

Beginning in August of 2006, Christianne Harris ("Harris"), a resident of Islamorada, alleges that she experienced sewage backups in her home. The sewage backups continued through November of 2006. In December of 2006, David Lanfrom ("Lanfrom"), a biologist, informed Harris that her house was contaminated with fecal contaminate and was unsafe to live in. The Harris family also became ill in December of 2006 and attributed their illness to exposure to fecal contaminate from the sewage backups. The Harris family subsequently vacated the house and took up residence in a motel.

In January of 2007, the "Health Department" visited Harris' home and concluded it was contaminated. Harris Compl. ¶ 20 (dkt # 1, at 86-96). Shortly thereafter, WPC hired Advanced Cleaning Systems "to remove [the Harris'] personal items from the house and to tear down the walls to get rid of the contamination." Id. ¶ 21. Lanfrom returned to the house in February of 2007. After conducting a random sampling he concluded that the house was still contaminated. In March of 2007, the sewer backed up again. "As a result of the fecal contaminate, the [Harris family] has not been able to return to their home." Id. ¶ 27.

In March of 2008, Harris filed a Complaint against WPC in the Circuit Court of the 16th Judicial Circuit in and for Monroe County. Harris brought claims on behalf of herself and her children for negligence, resulting in property damage and bodily injury, and for intentional

infliction of emotional distress. In response to Harris' claim, WPC sought coverage from Amerisure under the CGL Policy. Amerisure denied WPC's claim. WPC then filed a Complaint (dkt # 1, at 8-11) in the Circuit Court of the 16th Judicial District in and for Monroe County, Florida, seeking (1) a declaration that Amerisure has a duty to defend WPC in Harris' suit against WPC, and (2) a declaration that WPC is entitled to coverage under the CGL Policy. On November 20, 2008, Amerisure removed the action to this Court.

## II.  STANDARD OF REVIEW

The applicable standard for reviewing a summary judgment motion is unambiguously stated in Rule 56(c) of the Federal Rules of Civil Procedure:

> The judgment sought should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.

Summary judgment may be entered only where there is no genuine issue of material fact. Twiss v. Kury, 25 F.3d 1551, 1554 (11th Cir. 1994). The moving party has the burden of meeting this exacting standard. Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970). An issue of fact is "material" if it is a legal element of the claim under the applicable substantive law which might affect the outcome of the case. Allen v. Tyson Foods, Inc., 121 F.3d 642, 646 (11th Cir. 1997). An issue of fact is "genuine" if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party. Id.

In applying this standard, the district court must view the evidence and all factual inferences therefrom in the light most favorable to the party opposing the motion. Id. However, the nonmoving party "may not rest upon the mere allegations or denials of the adverse party's

pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). "The mere existence of a scintilla of evidence in support of the [nonmovant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmovant]." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986).

### III.  ANALYSIS

WPC claims that Amerisure has a duty to defend it in Harris' action against WPC. WPC further claims it is covered by the CGL Policy and the Limited Pollution Reimbursement-"Work Sites" Endorsement and that none of the policy exclusions apply. Amerisure contends that is has no duty to defend WPC and that coverage is precluded by the Pollution Exclusion, the Fungi or Bacteria Exclusion, and that the Limited Pollution Reimbursement-"Work Sites" Endorsement does not apply.[2]

#### A.  Duty to Defend

> It is well settled that an insurer's duty to defend its insured against a legal action arises when the complaint alleges facts that fairly and potentially bring the suit within policy coverage. The duty to defend must be determined by allegations in the complaint. The duty to defend is of greater breadth than the insurer's duty to indemnify, and the insurer must defend even if the allegations in the complaint are factually incorrect or meritless. Indeed, when the actual facts are inconsistent with the allegations in the complaint, the allegations in the complaint control in determining the insurer's duty to defend. Any doubts regarding the duty to defend must be resolved in favor of the insured.

Hartford Acc. & Indem. Co. v. Beaver, 466 F.3d 1289, 1292 (11th Cir. 2006) (quoting Jones v. Fla. Ins. Guar. Ass'n, 908 So. 2d 435, 442-43 (Fla. 2005)) (internal citations and quotation marks

---

[2] Defendant does not argue that the CGL Policy does not provide coverage. Thus, this Court will proceed upon the assumption that claims for which WPC seeks coverage constitute bodily injury or property damage caused by an occurrence that took place in the coverage territory.

omitted); see also Prudential Prop. & Cas. Ins. Co. v. Calvo, 700 F. Supp. 1104, 1105 (S.D. Fla. 1988) (stating that insurer's duty to defend is governed by allegations in the underlying complaint against the insured). Although an insurer has a duty to defend when some allegations in the complaint arguably fall within coverage of the policy, there is no duty to defend where the complaint shows either that there is no coverage or that a policy exclusion applies. Calvo, 700 F. Supp. at 1105. "Thus, the central inquiry in a duty to defend case is whether the complaint 'alleges facts that fairly and potentially bring the suit within policy coverage.'" Id. (quoting Jones, 908 So. 2d at 443).

    1.    The Pollution Exclusion

Amerisure contends that it has no duty to defend WPC because the Pollution Exclusion definitively bars coverage. The CGL Policy's Pollution Exclusion states, in relevant part:

f. Pollution
> (1) "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants:" . . .
>> (b) At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;
>> 
>> (c) Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for:
>>> (i) Any insured; or
>>> 
>>> (ii) Any person or organization for whom you may be legally responsible; or
>> 
>> (d) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the "pollutants" are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor . . . :

CGL Policy, CGL Coverage Form, Section 1, ¶ 2(f). "Pollutant" is defined as "any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste." Id. at Section V, ¶ 15. Waste includes "materials to be recycled, reconditioned or reclaimed." Id. The Florida Supreme Court has held that the absolute pollution exclusion found in CGL policies is clear and unambiguous. Deni Assocs. of Fla., Inc. v. State Farm Fire & Cas. Ins. Co., 711 So. 2d 1135, 1138 (Fla. 1998) (holding that "[w]e, too, agree that the pollution exclusion clause is clear and unambiguous").

      (a) Pollution Exclusion Section (1)

Section (1) of the Pollution Exclusion is the first clause of the exclusion and must apply in order for any of the subsections to apply because each subsection is contingent upon the application of Section (1). Section (1) requires that the property damage or bodily injury arise out of the "actual or threatened discharge, dispersal, seepage, migration, release or escape of 'pollutants.'" CGL Policy, CGL Coverage Form, Section 1, ¶ 2(f)(1). Fecal contaminant is a "pollutant" within the meaning of the CGL Policy because it is a solid irritant and contaminant, which falls within the CGL Policy's definition of a "pollutant." Philadelphia Indem. Ins. Co. v. Yachtsman's Inn Condo Ass'n, Inc., 595 F. Supp. 2d 1319, 1324 (S.D. Fla. 2009) (finding that feces and raw sewage is waste that is a pollutant within the meaning of a CGL policy's definition of "pollutant"). Harris claims that the property damage to her house, and bodily injury to herself and her family, was caused by fecal contaminate from sewer backups. Harris Compl. ¶¶ 14-15, 17- 21, 23, 25, 27. Thus, Section (1) applies because Harris alleges that the property damage and bodily injury was caused by the discharge or dispersal of a pollutant.

(b) Pollution Exclusion Subsection (1)(b)

In light of the applicability of Pollution Exclusion Section (1), the Pollution Exclusion eliminates Amerisure's duty to defend if any one of the subsections apply. Subsection (1)(b) applies if the pollutant causing the property damage or bodily injury is dispersed "[a]t or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste." CGL Policy, CGL Coverage Form, Section 1, ¶ 2(f)(1)(b). Thus, the question is whether the Harris' home is a location used by or for WPC or others for the handling, storage, disposal, processing or treatment of waste. Although "waste" does not have an independently numbered definition in the definitions section of the CGL Policy, the definition of "pollutant" describes "waste" as including "materials to be recycled, reconditioned or reclaimed." Id. at Section V, ¶ 15.

Based on the Complaint, raw sewage is the only relevant waste that WPC could have been handling, storing, disposing, processing or treating at the Harris' home. This proposition, however, depends on whether raw sewage is "waste" within the meaning of Section (1)(b) of the Pollution Exclusion. As an initial matter, the question of whether fecal contaminant is a "pollutant" differs from the question of whether raw sewage is "waste." The former depends on whether fecal contaminant is an irritant or contaminant, while the latter turns on whether raw sewage is a material to be recycled, reconditioned or reclaimed. Id. Raw sewage is waste within the meaning of Section (1)(b) because raw sewage is treated by using physical, chemical and biological processes to remove physical, chemical and biological contaminants from the wastewater. The remaining liquids and solids are suitable for discharge or reuse back into the environment. The "sludge" or "cake" remaining at the completion of the sewage treatment

7

process is nitrogen rich and sometimes converted into fertilizer. Thus, raw sewage is waste because it is a material that is recycled and reclaimed.

WPC was not using the Harris' home for the handling, storage, disposal, processing or treatment of waste. WPC constructed the waste treatment facility and the collection system. It did not, however, connect the Harris' home to the sewer lines. Pl.'s Answer to Interrogatories, ¶ 12 (dkt # 45-2). Any raw sewage leaving the Harris' home would end up in the collection system which would carry it to the waste treatment facility. Nevertheless, the fact that raw sewage originating in the Harris' home ended up in the system WPC constructed does not mean that WPC was handling, storing, disposing, processing or treating waste at the Harris' home. Therefore, coverage of WPC's claim is not precluded by Section (1)(b) of the Pollution Exclusion.

Section 1(b), however, also applies if the Harris' home was used by or for WPC "or others" for the handling, storage, disposal, processing or treatment of waste. This presents the question of whether the Harris family was using their home for the handling, storage, disposal, processing or treatment of waste. As an initial matter, there is nothing in the pleadings suggesting that the Harris family stored, processed, or treated waste in their home because depositing human waste into a receptacle connected to a sewage system for transport to a sewage treatment facility does not constitute storing, processing or treatment of waste inside of a home. Nevertheless, the Harris family undoubtedly disposed of raw sewage into the sewage system, and the plumbing in the home was the first stage in the waste handling process. Thus, it is clear that the Harris family disposed of waste in the home and that the plumbing in the home was part of the waste handling process.

For Section 1(b) to apply, however, the Harris family must not have merely disposed of or handled waste within the home. Rather, the CGL Policy requires that the Harris family must have used their home "for" disposing of or handling waste. Whether the Harris family used their home "for" disposing of or handling waste turns on whether the use of the word "for" in Section 1(b) requires that the disposing of or handling of waste be a primary or a substantial use of the home, or whether any disposing of or handling of waste in the home is sufficient, without respect to any other quantitative or qualitative uses of the home.

Construing the policy language accordingly to its plain meaning, this Court cannot conclude that the Harris family used their home for disposing of or handling waste. A family uses a home, particularly one that is the family's primary residence, as a secure and private location suitable for familial relations, including all the needs and activities incidental to family life, including shelter, safety, rest, cooking, intimacy and familial bonding. The mere fact that modern construction permits the accommodation of human digestive functions within the home does not, without more, mean that the occupants of the home use it for the disposal of or handling of waste. Were it otherwise, even a home with an outhouse would be used by a family for the disposal of and handling of waste, as long as the family sends any sink or bath water into a plumbing system, or perhaps even if the house lacks any plumbing, but the family takes out trash that falls within the CGL Policy's meaning of "waste." Such a tortured reading is unwarranted because it is contrary to the Pollution Exclusion's plain and clear language.

Moreover, taken to its logical conclusion, finding that a family uses a home for the disposal of or handling of waste based on the disposal of raw sewage would result in a coverage exclusion for every CGL policyholder who may be liable for property damage or bodily injury

caused by a pollutant that occurs inside of a building with plumbing. This is contrary to the purpose of, and justification for, the introduction of the Pollution Exclusion into CGL polices in 1970, which was merely meant to be a clarification of existing coverage to establish that, with respect to property damage or bodily injury caused by a pollutant, the loss had to be unintended and unexpected from the standpoint of the insured. See Carl A. Salisbury, Pollution Liability Insurance Coverage, The Standard-Form Pollution Exclusion, and the Insurance Industry: A Case Study in Collective Amnesia, 21 Envtl. L. 357, 368-379 (1991); Hollis M. Greenlaw, The CGL Policy and the Pollution Exclusion Clause: Using the Drafting History to Raise the Interpretation out of the Quagmire, 23 Colum. J. L. & Soc. Probs. 233, 246-49 (1990). Therefore, the Harris family did not use their home for the disposal of or handling of waste within the meaning of the Pollution Exclusion. Accordingly, Section 1(b) of the Pollution Exclusion does not eliminate Amerisure's duty to defend.

(c) Pollution Exclusion Subsection (1)(c)

Subsection (1)(c) applies if the pollutant causing the property damage or bodily injury was "at any time transported, handled, stored, treated, disposed of, or processed as waste by or for . . . any insured . . . or any person or organization for whom you may be legally responsible." CGL Policy, CGL Coverage Form, Section 1, ¶ 2(f)(1)(c). WPC was the general contractor in the construction of Islamorada's waste treatment facility and sewer collection system. Upon review of Harris' Complaint, it is unclear what WPC's activities as general contractor were comprised of during the period of the sewer backups in the Harris' home, which occurred after the Village of Islamorada put the sewer collection system into use. The Harris Complaint states that "WPC informed the [Village of Islamorada] that they were having problems with the lids and seals on the

sewer system, and when the new lids arrived, the problem with the [backups] would be resolved." Id. ¶ 24. Thus, it appears that WPC was still performing some work on the sewer collection system when the backups occurred.

Nevertheless, allegations in the Complaint pertaining to WPC's role as general contractor during the period of the backups are scant, thereby permitting an inference that WPC either was or was not transporting, handling, storing, treating, disposing of, or processing a pollutant as waste. Given that this Court must refer to the allegations in the Complaint to determine whether a duty to defend exists, and the absence of any facts pleaded demonstrating that WPC transported, handled, stored, treated, disposed of, or processed a pollutant as waste during the relevant period, the allegations in the Complaint arguably fall within coverage of the policy. Accordingly, Section 1(c) of the Pollution Exclusion does not eliminate Amerisure's duty to defend.

(d) Pollution Exclusion Subsection (1)(d)

Subsection (1)(d) applies if the pollutant causing the property damage or bodily injury was dispersed "[a]t or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the 'pollutants' are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor." CGL Policy, CGL Coverage Form, Section 1, ¶ 2(f)(1)(d). Section (1)(d) does not apply because WPC or a contractor or subcontractor working directly or indirectly on its behalf were not performing operations in the Harris' home. WPC did not connect the Harris' home to the sewer collection system and the party that did was not working directly or indirectly on behalf of WPC, but rather was working directly

11

on behalf of the Harris family. Therefore, Section 1(d) of the Pollution Exclusion does not eliminate Amerisure's duty to defend.

    2.    Fungi or Bacteria Exclusion

The fungi or bacteria exclusion applies if the property damage or bodily injury would not have occurred "but for the actual, alleged or threatened inhalation of, or ingestion of, contact with, exposure to, existence of, or presence of, any "fungi" or bacteria on or within a building or structure, including its contents, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to such injury or damage." CGL Policy, Fungi or Bacteria Exclusion (dkt # 1, at 34). Here, the Harris Complaint alleges that the property damage and bodily injury was caused by the presence of fecal contaminate. This Court cannot conclude at this juncture, based only on the facts alleged, that the claims of property damage and bodily injury caused by fecal contaminate fall within the ambit of this exclusion. Therefore, the Fungi or Bacteria Exclusion does not eliminate Amerisure's duty to defend.[3]

    B.    <u>Duty to Indemnify</u>

There are many issues of material fact concerning whether the above-referenced exclusions restrict coverage and whether coverage exists under the Limited Pollution Reimbursement - "Work Sites" endorsement. These factual issues are best resolved in the underlying claim by Harris against WPC. <u>Calvo</u>, 700 F. Supp. At 1105-06 (when an underlying action will decide identical issues in the declaratory judgment action the court has discretion to stay the declaratory judgment

---

[3] It is unnecessary to address the duty to defend based on coverage under the Limited Pollution Reimbursement - "Work Sites" endorsement because a duty to defend exists under the CGL Policy coverage for bodily injury and property damage liability.

12

action pending resolution of the underlying action). Accordingly, this case is stayed pending resolution of the underlying action.

## IV. CONCLUSION

Based on the foregoing, it is

ORDERED AND ADJUDGED that Defendant's Motion for Summary Judgment (dkt # 32) is DENIED. The Clerk of the Court is instructed to administratively CLOSE this case. All pending motions are DENIED AS MOOT.

DONE AND ORDERED in Chambers at Miami, Florida, this 16th day of September, 2009

K. MICHAEL MOORE
UNITED STATES DISTRICT JUDGE

cc: All counsel of record